GOUGAR v. MORSE.

(Circuit Court, D. Massachusetts. March 21, 1895.)

No. 250.

1. NEW TRIAL—AMBIGUOUS CHARGE TO JURY.

In an action for libel, for words alleged to have been spoken of the plaintiff as a public speaker, the evidence upon all the issues which plaintiff, on the motion for new trial, claimed to have been essential to the case, was such as to require a verdict for the plaintiff. The declaration contained an allegation which, plaintiff maintains, bore only on the question of damages, but which, defendant claims, raised an essential issue in the case itself. Evidence both in support and denial of such allegation was introduced. In its charge the court used language which might be construed as an instruction to the jury that the plaintiff must prove this allegation as a part of her case, but which was so far ambiguous as to mislead the plaintiff (under the impression that the court did not intend to give such instruction) into omitting to except to the charge. The jury gave a verdict for the defendant. *Held*, that the verdict should be set aside, and a new trial granted.

2. SAME—DISCRETION IN IMPOSING TERMS.

It is the ordinary common-law right of a suitor who has suffered from a mistrial to enjoy a new trial (including the assessment of damages by a jury), without conditions; and though there are cases where that which is erroneous may be severed, and the new trial limited or conditioned accordingly, or where terms affixed to the granting of a new trial are clearly within the line of the legal rights of the parties, judicial discretion should rarely go beyond these limits in imposing terms upon the granting of a new trial.

This was an action by Helen M. Gougar against Elijah A. Morse. Defendant obtained a verdict, and plaintiff now moves for a new trial.

Harvey N. Shepard, for plaintiff.

George D. Robinson and Henry F. Buswell, for defendant.

PUTNAM, Circuit Judge. This is a suit for libel. There was a verdict for the defendant, and the plaintiff, within the time fixed therefor by the rules, filed a motion for a new trial, for the alleged

reasons that the verdict was against the evidence and the weight of the evidence, and against the law and the instructions of the court. For reasons which will appear in the course of this opinion, the court has given this motion very careful examination, and reaches its conclusions with doubt. It is, however, satisfied that by its conclusions it is less likely to do substantial injustice than by a different result.

The only portion of the pleadings which it is essential to set out is the following extract from one count in the declaration, the other counts being for present purposes substantially the same:

"And the plaintiff says that on or about the 10th day of October, A. D. 1892, she was president of the Woman Suffrage Association, of and for the state of Indiana, and interested actively therein, and also connected with the Women's Christian Temperance Union, of and for the United States of America, and interested actively therein, and especially in the consideration and exposition of the effect upon working people of the use of alcohol and intoxicating drinks; and, also, she then was a member of the national executive committee of the Prohibition party of and for the said United States of America, and that she was known and reputed generally to be interested in the said woman suffrage and temperance causes, and was known publicly as a speaker therein; and, on or about the said 10th day of October, she also was and had been engaged and employed in the said district of Massachusetts in the making of public addresses relative to and in advocacy of the platforms and principles adopted by the Prohibition party of the United States and of the commonwealth of Massachusetts, and the election of the national and state candidates nominated thereby; and the defendant, on or about the said 10th day of October, intending to accuse, and accusing, the plaintiff of falsehood and misrepresentation in her public addresses as aforesaid, and of insincerity therein, and intending and seeking to defame the plaintiff, to blacken her reputation, to hurt her as an officer aforesaid and as a public speaker and as a woman, and to render her infamous, odious, and ridiculous, and to expose her to hatred, contempt, and ridicule, wrote and sent to Arthur B. Pierce, of Attleboro, in said district, a letter, a copy whereof, marked 'A,' is annexed hereto, and made a part of this declaration, which letter contains the following words: [Here follows the alleged libel.]"

The plaintiff, while introducing her evidence in chief, and without waiting to rebut the defendant's case, asked a witness whether he knew the reputation of the plaintiff as a public advocate of prohibition. This was admitted as merely preliminary. Next, she asked him what in October, 1892, was her reputation as a public advocate of prohibition in Massachusetts. This was objected to by the defendant, on the ground that there was no allegation touching the character of her reputation in that particular; that the allegation was merely that she was known publicly, without anything to the effect that she was known favorably or otherwise. Thereupon, after some consideration, plaintiff was allowed to amend her declaration by inserting, after the words "and was known publicly as a speaker therein," the words "and was of good and favorable reputation as such public speaker." Thereupon, after the amendment, plaintiff's counsel put the following question to the same witness: "In the month of October, 1892, just previous to the 10th, in this community, was the reputation of Mrs. Gougar as a public speaker in the prohibition and woman suffrage causes good or bad?" The defendant continued his objection, but the court admitted the question, and it was answered as follows: "I should

say very good." As the result of the opening of this topic by the plaintiff, further evidence of a like character was put into the case by her, and the defendant met it, or endeavored to meet it, by evidence showing his view of the plaintiff's reputation, which evidence on his part the following, from his own testimony, fairly characterizes:

"Her reputation as a speaker is that she is a speaker of ability and remarkable command of language, and a very sharp, personal, bitter, and vindictive public speaker."

A careful examination of the record fails to show that the court considered definitely whether this amendment and the evidence referred to related to the cause of action, and were essential to it, or concerned only the question of damages. This latter question the plaintiff was, of course, entitled to open in this way at the outset of her case, if she saw fit so to do and the court saw no reason to the contrary, without waiting to reply to the defendant's case. Neither does it appear satisfactorily to which of these topics the plaintiff regarded the amendment and the evidence to relate. Indeed, she was not requested to elect, and, perhaps, could not have been required to elect, in reference thereto, at that stage of the case; but she was permitted to put in the amendment and proofs, and draw such advantage from them as she might draw in any direction according to subsequent developments.

The only alleged libelous expression which the court allowed to go to the jury was the following: "She [that is, the plaintiff] is a soldier of fortune, who works for the side that pays the best." Touching that, the court in substance said, with the explanations we will give further on, that it involved a charge of insincerity, and that, for a person who undertakes to instruct and persuade the public, sincerity of character and a reputation for such sincerity are ordinarily of very great value. The court further said every charge of insincerity is not libelous, and that, if libelous in this case, it was because it was made against a person occupying the position and doing the work which the plaintiff claims she was doing. As illustrating this, the court referred to Com. v. Wright, 1 Cush. 46, where it was held that it is libelous to publish of one in his capacity of a juror that he in such capacity agreed with another juror to stake the decision of the amount of damages to be given in a cause then under their consideration, upon a game of checkers. The court observed that, in the case cited, this was libelous, because it was spoken of a juror in his capacity as such; and that, on like principles, in the case on trial the expression stated was libelous, if at all, because it referred to the plaintiff as a public speaker. To make plain, an examination of the record shows the basis on which the court proceeded was that these words would not have been libelous if they had referred to the plaintiff merely as a private individual. Therefore, according to the views of the court by which the trial was governed, it was necessary to the plaintiff's case to prove, as a matter of fact, that she was a public speaker, as alleged, and that these words referred to her in her capacity as such.

On this motion for a new trial, a question has arisen between counsel whether it was also ruled that it was necessary to prove as a part of the plaintiff's principal case, and not merely with reference to an enhancement of damages, that her reputation as such public speaker was such as was alleged in the amendment which the plaintiff made. It is clear, as already stated, that, at the time the amendment was offered, this precise question was not brought to the attention of the court, and was not specifically ruled on; and it is also clear that the amendment was pertinent with reference to the matter of the enhancement of damages, if not necessary with reference to the plaintiff's principal case. The court regrets, however, to find, on a re-examination of the charge, that the earlier parts of it gave some ground for misunderstanding among counsel touching the instructions which the court gave the jury on this particular topic; and, further, that, if the court can fairly be understood to have instructed the jury as the defendant claims it did, the plaintiff was misled, and therefore failed to take the exception which she otherwise might have taken.

It cannot be doubted that the expression which the court allowed to go to the jury as actionable was so plain and unambiguous to the common understanding that, the conditions referred to being satisfied, the question whether it was libelous or not was for the court. It is not necessary to cite authorities to any extent on this proposition, and the court only refers, therefore, to Morgan v. Halberstadt (decided by the circuit court of appeals for the Second circuit) 9 C. C. A. 147, 60 Fed. 592, and to the exceedingly careful opinion of Judge Taft, in behalf of the circuit court of appeals for the Sixth circuit, in Post Pub. Co. v. Hallam, 8 C. C. A. 201, 59 Fed. 530. The last case meets the claims which were raised at the trial, touching the lack of actual malice on the part of the defendant, of good faith on his part, and that the matter was of public interest, and therefore privileged; and it also supports the proposition that the law looks, not at what was intended to be charged, but at what was in fact written. It is also not necessary to cite authorities on the proposition that, if the conditions referred to were satisfied, the expression is libelous. But Post Pub. Co. v. Hallam, ubi supra, is singularly in point. There the defendant below charged the plaintiff below with selling his influence in a political convention. This was held to be libelous per se, and, on the question of privilege, the court cited and approved the expressions of Lord Herschell in Davis v. Shepstone, 11 App. Cas. 187, as follows:

"There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public. But the distinction cannot be too clearly borne in mind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed or discreditable language used. It is one thing to comment upon or criticise, even with severity, the acknowledged or proved acts of a public man, and quite another to assert that he has been guilty of particular acts of misconduct."

The defendant, moreover, failed to justify—that is, to prove—that the plaintiff was in fact insincere, or, if it was necessary for him to do so, to prove that her reputation as a public speaker was that

of insincerity, although he did offer evidence tending to show that her reputation as such was of the character described by him in the extract we have made from his evidence. There was matter which came into the case in one way and another, tending not only to support this evidence, but also to show that the plaintiff's methods as a public speaker were in fact sharp, personal, and bitter.

At the close of the charge, in reply to a question by a juryman, the court said as follows:

"You understand from my charge that if you find that the plaintiff was engaged as a public speaker, as she says in her writ she was, and if the words, which I will read to you again, related to her as a public speaker, then they are libelous; that is, 'she is a soldier of fortune, who works for the side that pays the best.' If you find she was engaged as a public speaker, as she says, and those words related to her as a public speaker, then I instruct you they are libelous."

It will be observed that this left out an element or condition requiring that the jury should find as essential to the plaintiff's cause of action the matter covered by the plaintiff's amendment. It will also be noticed that this was the last expression to the jury on this topic. With reference to damages, the court instructed the jury that there was no evidence of special damages, as that the plaintiff had lost or suffered in her occupation; that the question of damages was one of injury to her sensibilities and reputation; that she was entitled to such special consideration of the injury to the former as came from the fact that she valued and cherished her reputation as a public speaker; but that, in taking into account her sensibilities and reputation, the jury should take them just as they were presented to them at the trial. Beyond this, the attention of the jury was not called by the court to the favorable or unfavorable character of her reputation, or to the points with reference thereto raised by the amendment and evidence which we have explained; and no request for a more specific ruling in those particulars was made by either party. The jury were not told in terms that if they found that the plaintiff was engaged as a public speaker as alleged, and that the words cited related to her as such public speaker, they should return a verdict for the plaintiff; but, as the case stood, the verdict for the defendant was clearly erroneous, and should be set aside, unless the third condition fairly came into the case, as is claimed by the defendant on this motion for a new trial. There was no doubt, on the evidence, that she was a public speaker, as alleged in her declaration, and was publicly known as such. There was also no doubt that the words submitted to the jury referred to her as such public speaker. Therefore, if only these two conditions had been involved, the language cited was libelous, not privileged, nor justified; and it was undoubtedly the duty of the jury to return a verdict for the plaintiff, even though for nominal damages, and the court might well have expressly instructed them so to do.

But, as already said, the defendant claims that the court, in its charge, made a third condition essential to the plaintiff's principal case; namely, that the allegation of the plaintiff's amendment to

the effect that she was of good and favorable reputation as a public speaker should also be established. If the court had clearly so ruled, and thus clearly furnished the plaintiff ground for an exception to such ruling, the court has no doubt that it would be beyond its power to disturb this verdict; as the evidence on this proposition was of such character, pro and con, as undoubtedly to leave the case in this particular to the judgment of the jury as the ultimate arbiter. But while there are some things in the early part of the charge which apparently justify this proposition, and, as already said, lead to misapprehension, yet the court is not satisfied that the charge as a whole fairly bears that construction. The court need not, however, follow this further, because, if it does bear that construction, the plaintiff was, nevertheless, fairly led to assume otherwise, and especially to assume that the early parts of the charge were superseded by the closing remarks to the jury, already cited. For the court to hold now that any rule other than that given in its closing remarks was intended by it or given by it would operate unjustly, in connection with an excusable misunderstanding on the part of the plaintiff, to deprive her of exceptions which she might have taken, if she had conceived the rulings of the court to have been as now claimed by the defendant. One of two propositions seems clear. Either the court must be held to its closing remarks, in which case the verdict of the jury was clearly against the instructions, or there is an inconsistency between the various parts of the charge which obviously tended to mislead the plaintiff. In either event the plaintiff has been injured. Therefore, the court is constrained to stand by its closing instructions, and to hold that, in accordance with them, the jury should have returned a verdict for the plaintiff, and that its verdict for the defendant was a mistaken and erroneous one; not only against the evidence, but against the law as given at the trial, and as required to be applied to the undoubted facts of the case. In coming to this conclusion, the court feels that the error arose more from its own failure to give positive instructions with reference to the results of the complicated rules of law touching actions of libel, applicable to the case at bar, than from any purposed inattention of the jury. The court has not found it necessary to determine what is the true principle of law in the particular in dispute, because, on reflection, the court perceives that it must, for the purposes of this motion, stand on what was in fact ruled at the trial, or that it will deprive plaintiff of exceptions to which she would otherwise have been justly entitled.

It was suggested at the hearing of this motion, and is now claimed by the defendant, that as the damages must in any event be nominal, or at least very small, the court would be justified in imposing on plaintiff the terms of an option on the part of defendant to consent to a judgment for a nominal or small amount, to be fixed by the court. There are many reasons, in view of the state of the evidence, and also in view of the public and private expenditures involved in a new trial, which appeal to the court to take this view; but the court is satisfied that it cannot lawfully do so. Within two or three days after the date of the alleged libel, the defendant

gave a very wide publication to what was claimed in defense to have been a retraction. In view of the fact that the law is that there could be but one assessment of damages, to cover both the past and the future, and that the jury may find that the injury arising from a specific libel is continuing, it seemed to the court proper to allow the retraction to go to the jury, for it to determine whether or not it operated to diminish the continuing injury, to stay it entirely, or perhaps to enhance it. While the alleged retraction did not in terms directly traverse the alleged libel, as it might have done if drawn under legal advice, yet there was much in the method of its publication on which to base arguments in behalf of the defense that it might well have been accepted by the plaintiff; and there was some evidence to support the claim that it had in fact been so accepted. For this and other reasons shown in the case, it is apparent that, if the verdict had been for a nominal or small amount, it would have been beyond the just power of the court to interfere with it; and this fact is now pressed on us as a ground for refusing a new trial, except subject to the terms named. But, in cases of this character, damages—within, of course, certain extreme limits—are so far outside any rules of admeasurement which the court possesses that the right to have them determined by a jury is a fundamental one at common law. There are, of course, cases where, on granting a new trial, that which is erroneous may be severed, and the new trial limited or conditioned accordingly; and there are also cases where terms affixed to the granting of a new trial are clearly within the line of the legal rights of the parties. But beyond this judicial discretion in this direction should rarely go. It is the ordinary common-law right of a suitor who has suffered from a mistrial to enjoy a new trial without conditions; and for the court to impose terms, unless in exceptional cases, is less like administering the law than it is like involving the injured party in a legal trap, and refusing him permission to esape except under a penalty. Among the great number of cases in which new trials have been granted, precedents can, perhaps, be found for sustaining the exercise of judicial discretion to the extent of giving the defendant an option in the case at bar; but the court, in the absence of a precedent which directly controls it, considers it its duty to maintain the legal rights of parties according to the common law, with only such exceptions in the application of judicial discretion as are sustained by well-settled practice. The plaintiff's right to a legal verdict involved an assessment of damages by the jury; and as, by reason of an erroneous trial, her constitutional privilege to have such an assessment has not been realized, the court feels compelled to secure it to her.

The verdict is set aside, and a new trial granted.